1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        21-CR-520(WFK)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,               Brooklyn, New York

5              -against-                October 19, 2021
                                        12:00 p.m.
6    CREDIT SUISSE SECURITIES
     (EUROPE) LIMITED,
7
               Defendant.
8    ------------------------------x

9              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
               BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  HIRAL D. MEHTA , ESQ.
                                     MARGARET MOESER, ESQ.
15                                   DAVID FUHR, ESQ.
                                Assistant United States Attorneys
16
     For the Defendant:        PAUL HASTINGS, LLP
17                              2050 M Street NW
                                Washington, DC 20036
18                              BY:  MATTHEW JOHN HERRINGTON, ESQ.
                                     – and –
19                              KIRKLAND & ELLIS LLP
                                1301 Pennsylvania Avenue, N.W.
20                              Washington, DC 20004
                                BY:  MARK R. FILIP, ESQ.
21
     Also Present:             FATIMA HAQUE
22                             GWYNETH HOCHHAUSLER

23   Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                                Phone:  718-613-2330
24                              Fax:    718-804-2712
                                Email:  LindaDan226@gmail.com
25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    2

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              United States District Court for the Eastern

4    District of New York is now open for the transaction of all

5    such business which may come before it.  The Honorable William

6    F. Kuntz, II presiding.

7              Criminal cause on for a pleading.  Case number

8    21-CR-520.  U.S.A. versus Credit Suisse Securities (Europe)

9    Limited.

10             Counsel, please state your appearances for the

11   record, starting with the government.

12             MR. MEHTA:  Good afternoon, Your Honor.  Hiral Mehta

13   for the United States of America.  And I'm joined by my

14   colleague from the Department of Justice.

15             MS. MOESER:  Margaret Moeser, United States, Your

16   Honor.

17             MR. FUHR:  Good afternoon, Your Honor.  David Fuhr

18   from the Department of Justice.

19             MR. MEHTA:  I'm also joined by special agent.

20             MS. HAQUVE:  Fatima Haque with the FBI.

21             THE COURT:  Good afternoon.  You may be seated.

22             MR. HERRINGTON:  Good afternoon, Your Honor.

23   Matthew Herrington from Paul Hastings for the defendant.

24             MR. FILIP:  Good afternoon, Your Honor.  Mark Filip

25   from Kirkland & Ellis for the defendant.

PROCEEDINGS                                          3

1              And just to be clear, sir, I believe my pro hac

2    papers are in the clerk's office now but they haven't been

3    formally granted yet.  As an officer of the court, I can tell

4    you that I am in good standing, but I just wanted to be clear.

5              THE COURT:  You are admitted.

6              MR. FILIP:  Thank you, sir.

7              THE DEFENDANT:  Alan Reifenberg from Credit Suisse.

8              THE COURT:  Good afternoon, you may be seated.

9              Members of the public may be seated as well.

10             Make sure your microphones are turned on when you

11   speak.  The little green light is the subtle indicator that

12   it's working and it's on.

13             Are there any other counsel who wish to states their

14   appearances for the record today?

15             (No response heard.)

16             THE COURT:  Hearing none.

17             And appearances having been taken, defense counsel,

18   I understand your client wishes to waive indictment and to

19   enter a plea; is that correct?

20             MR. HERRINGTON:  That's correct.

21             THE COURT:  You can remain seated.  Just pull the

22   microphone towards you when you speak, and just -- we'll

23   proceed in that fashion.

24             Before we proceed, please identify who will be

25   speaking on behalf of defendant Credit Suisse Securities

PROCEEDINGS                    4

1   (Europe) Limited, whom I will refer to as the "defendant" for

2   the remainder of this first proceeding.  And there'll be

3   immediately followed up second proceeding.

4           So who is the authorized representative under board

5   certifications to the assist in pleading guilty on behalf of

6   the defendant?

7           MR. HERRINGTON:  Your Honor, that's Alan Reifenberg

8   to my right.  He is the global head of litigation and

9   investigations for Credit Suisse.

10          THE COURT:  Would you please spell your name, sir,

11  for the record.

12          THE DEFENDANT:  Certainly.

13          THE COURT:  And state your title.

14          THE DEFENDANT:  Sure.  It's Alan, A-L-A-N,

15  Reifenberg, R-E-I-F, as in frank, E-N-B-E-R-G.

16          And I'm managing director and global head of

17  litigation and investigations for Credit Suisse.

18          THE COURT:  Thank you, sir.

19          Now, Mr. Reifenberg, defense counsel has advised the

20  Court that the defendant, Credit Suisse (Europe) Limited,

21  wishes to waive indictment and to plead guilty to the

22  information in which it is charged.

23          This is a very serious decision and I must be

24  certain that the waiver of indictment and the guilty plea are

25  being made with the full understanding by the defendant of the

PROCEEDINGS                    5

1    defendant's rights and the consequences of these decisions.

2              In addition to explaining the rights the defendant

3    will be waiving, or giving up, by way of indictment and

4    pleading guilty at this time, there are a number of questions

5    I must ask you as a representative of the defendant in order

6    to establish that the defendant is, in fact, acting knowingly

7    and voluntarily.

8              If you do not understand these questions, please say

9    so, and I will reword them or clarify them.  If you would like

10   to consult counsel at any time, just let me know and we will

11   take a break for you to do that.

12             I'm going to ask my court deputy, Ms. Yu, to please

13   have you stand and raise your right hand and take the oath.

14             THE COURTROOM DEPUTY:  Do you swear or affirm that

15   the answers you're about to give in connection to this plea

16   will be the truth, the whole truth and nothing but the truth,

17   so help you God.

18             THE DEFENDANT:  I do.

19             (Whereupon, the defendant was sworn/affirmed.)

20             THE COURT:  Mr. Reifenberg, what is your current

21   position with the company, the defendant.

22             You may remain seated, sir, and pull the microphone

23   and to make sure it's on.

24             THE DEFENDANT:  I'm a managing director in the

25   general counsel function.  And I'm the global head of

PROCEEDINGS                                           6

1    litigation and investigation.

2              THE COURT:  What are your responsibilities in that

3    capacity or those capacities?

4              THE DEFENDANT:  I'm the chief litigator of Credit

5    Suisse AG, the global company.

6              THE COURT:  Are you admitted to practice law in any

7    courts?

8              THE DEFENDANT:  I think New York, yes.

9              THE COURT:  How long have you held the position that

10   you just described?

11             THE DEFENDANT:  I've been with the bank, this is my

12   16th year.  I've been a managing director for ten plus years.

13             I've been global head of litigation, this is my

14   seventh year.

15             THE COURT:  Have you been authorized by the board of

16   directors of the defendant to appear in this case on its

17   behalf and to waive indictment and to plead guilty in this

18   case?

19             THE DEFENDANT:  I have.

20             THE COURT:  Did you gain that authority from the

21   board of director's certificate of corporate resolution, which

22   is attached to the proposed plea agreement as attachment B?

23             THE DEFENDANT:  That's right.

24             THE COURT:  The Court hereby finds, based on

25   Mr. Reifenberg's representations, and the representations of

PROCEEDINGS                               7

1    all counsel of record, that Mr. Reifenberg is authorized to

2    appear in this case on behalf of the defendant, Credit Suisse

3    (Europe) Limited.

4              Let me now address the charge with some specificity.

5              I say again, sir, this Court has been informed that

6    the defendant wishes to waive indictment and to plead guilty

7    to the sole count of the information pursuant to a written

8    plea agreement.

9              I have a copy of the information in this case

10   charging the defendant with the conspiracy to commit wire

11   fraud in violation of Title 18 of the United States Code,

12   Section 1349.

13             The Court has marked the information as Court

14   Exhibit 1 for identification.

15             May have a motion to have Court 1 admitted into

16   evidence?  Motion from the government.

17             MR. MEHTA:  So moved, Your Honor.

18             THE COURT:  Any objection?

19             MR. HERRINGTON:  Without objection.

20             THE COURT:  It's admitted.

21             (Court Exhibit 1, was received in evidence.)

22             THE COURT:  The information is now admitted in

23   evidence as Court 1.

24             Mr. Reifenberg, were you and the board of directors

25   for the defendant provided a copy of the information in this

PROCEEDINGS                                                    8

1    case?

2              THE DEFENDANT:  Yes, we both were.

3              THE COURT:  And have you and the board of directors

4    discussed the charge, as well as the case in general with your

5    attorneys?

6              THE DEFENDANT:  Yes, we both have.

7              THE COURT:  The information charges the defendant

8    with conspiracy to commit wire fraud.  Specifically, the

9    information details a scheme in which the defendant and its

10   coconspirators used United States wires and the United States

11   financial system to defraud the United States of America and

12   international investors in the Ematum, E-M, as in Mary, A-T,

13   as in Thomas, U-M, as in Mary securities.

14             The coconspirators used international and interstate

15   wires to, from, and through the United States of America,

16   including wires through the Eastern District of New York, to

17   transmit false and misleading statements to investors in the

18   Ematum Securities, and it made transfers of proceeds obtained

19   from those investors, and paid kickbacks to Credit Suisse

20   bankers and bribes to Mozambican officials.

21             Does the defendant fully understand the nature of

22   the charges against him?

23             THE DEFENDANT:  It does.

24             THE COURT:  Do the parties waive the reading of the

25   information?  Beginning with the government.

1          MR. MEHTA:  Yes, Your Honor.

2          THE COURT:  Defense?

3          MR. HERRINGTON:  Yes, Your Honor.

4          THE COURT:  Now, Mr. Reifenberg, instead of an

5   indictment, this felony charge have been brought by the filing

6   of an information by the United States Attorney for the

7   Eastern District of New York, the acting chief of the fraud

8   section of the criminal division of the United States

9   Department of Justice, and the chief of the money laundering

10  and asset recovery section of the criminal division of the

11  United States Department of Justice.

12          Defendant has a constitutional right to be charged

13  by way of an indictment returned by a grand jury.  The

14  defendant can waive that right and consent to being charged by

15  information.

16          Do you understand that, Mr. Reifenberg?

17          THE DEFENDANT:  I do.

18          THE COURT:  If the defendant does not waive the

19  indictment, however, the defendant may not be charged with a

20  felony unless a grand jury finds by return of an indictment

21  that there is probable cause to believe that a crime has been

22  committed and that the defendant committed it.

23          You understand that, Mr. Reifenberg?

24          THE DEFENDANT:  I do.

25          THE COURT:  If the defendant does not waive an

1    indictment, the government may present this case to the grand

2    jury, and ask the grand jury to indict the defendant.  A grand

3    jury is composed of at least 16, but not more than 23 people.

4           Before the defendant may be indicted, at least 12

5    grand jurors must find probable cause to believe the defendant

6    committed the crime with which it is charged.  The grand jury

7    might or might not indict the defendant.

8           If you on behalf of the defendant waive indictment

9    by the grand jury, however, the case will proceed against the

10   defendant on the information of the Assistant United States

11   Attorney for the Eastern District of New York just as if the

12   defendant had been indicted.

13          Does the defendant understand its rights to

14   indictment by a grand juror, sir?

15          THE DEFENDANT:  It does.

16          THE COURT:  Is the defendant willing to waive the

17   right to have this case proceed by way of an indictment and to

18   be indicted by a grand jury?

19          THE DEFENDANT:  Yes, we do.

20          THE COURT:  Did you and the board of directors

21   discuss this decision with the defendant's attorneys?

22          THE DEFENDANT:  We have.

23          THE COURT:  Have any threats or promises been made

24   to induce the defendant to waive its right to indictment by

25   way of grand jury?

PROCEEDINGS                                    11

1          THE DEFENDANT:  No, there has not.

2          THE COURT:  Is the defendant waiving its right to

3    indictment voluntarily and of its own free will?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Counsel, are you aware of any reason

6    that this defendant should not waive indictment?

7          MR. HERRINGTON:  I am not, Your Honor.

8          THE COURT:  The Court finds, based on the

9    representations of Mr. Reifenberg and of his defense counsel

10   for the company, that the defendant's waiver is made

11   knowingly, intentionally and voluntarily.  The Court hereby

12   accepts the waiver of indictment.

13         I've received a copy of the waiver the indictment

14   form and I am signing it now.

15         (Pause in the proceedings.)

16         THE COURT:  Here is the waiver the indictment form.

17         Would you please mark this as Court Exhibit 2.

18         Now the Court also has a plea agreement, which I'm

19   going to mark as Court 3 for identification.

20         First let me move the waiver of indictment into

21   evidence.

22         Is there any objection to that coming in from the

23   prosecution?

24         MR. MEHTA:  No, Your Honor.

25         THE COURT:  From the defense?

PROCEEDINGS                           12

1              MR. HERRINGTON:  No, Your Honor.

2              THE COURT:  All right, it's admitted.

3              (Court Exhibit 2, was received in evidence.)

4              THE COURT:  Now the Court also has a copy of the

5    plea agreement, and we have the signed plea agreement marked

6    as Exhibit 3.

7              Do we have that?

8              MR. MEHTA:  Yes, Your Honor.

9              May I approach, Your Honor?

10             THE COURT:  Yes, give it to the court deputy,

11   please.

12             This will be marked as Court 3 for identification.

13   Thank you.

14             The plea agreement, marked as Court 3 for

15   identification, has three attachments, attachments A, B and C.

16             May I have a motion to have the plea agreement and

17   the attached accompanying attachments in evidence as

18   Exhibit 3?

19             Moved, government?

20             MR. MEHTA:  So moved, Your Honor.

21             THE COURT:  Any objection?

22             MR. HERRINGTON:  No objection, Your Honor.

23             THE COURT:  The agreement is now admitted as Court

24   3.

25             (Court Exhibit 3, was received in evidence.)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                    13

1          THE COURT:  Mr. Reifenberg, did you sign this

2    agreement?

3          THE DEFENDANT:  I did.

4          THE COURT:  Did you and the board of directors have

5    an opportunity to read and discuss the agreement with your

6    attorney before you signed it?

7          THE DEFENDANT:  Yes, we both did.

8          THE COURT:  Did you and the board have sufficient

9    time to review it with your counsel?

10          THE DEFENDANT:  We did.

11          THE COURT:  Counsel, did you have sufficient time to

12    review the agreement with your client?

13          MR. HERRINGTON:  I did, Your Honor.

14          THE COURT:  Mr. Reifenberg, do you have any

15    questions about the agreement?

16          THE DEFENDANT:  No.

17          THE COURT:  Does the agreement represent the

18    defendant's entire understanding with the government?

19          THE DEFENDANT:  It does.

20          THE COURT:  Other than the deferred prosecution

21    agreement with the defendant's parent company, which we'll

22    address in the next part of this proceeding, Credit Suisse

23    Group AG, has anyone made any promise or assurance to persuade

24    you to accept this particular agreement on behalf of the

25    defendant?

PROCEEDINGS                              14

1              THE DEFENDANT:  No.

2              THE COURT:  Has anyone threatened the defendant in

3     any way to persuade the defendant to accept this agreement?

4              THE DEFENDANT:  No.

5              THE COURT:  Do the parties waive the reading out

6     loud of the plea agreement?

7              Government, do you waive?

8              MR. MEHTA:  Yes, Your Honor.

9              THE COURT:  Defense counsel, do you waive?

10             MR. HERRINGTON:  We do, Your Honor.

11             THE COURT:  All right.  The waiver is accepted by

12    the Court.

13             Mr. Reifenberg, unless counsel wishes to be heard or

14    has an objection, the Court believes we will now turn to the

15    final procedures for taking the defendant's plea in this case.

16             Mr. Reifenberg, I've already advised you of the

17    charges in the information; that is to say, conspiracy to

18    commit wire fraud.

19             I say again, this is a serious decision and I must

20    be certain that you make it understanding your rights and the

21    consequences of your plea on behalf of the client.

22             Have you and the board of directors had sufficient

23    time to discuss with the defendant's attorney whether or not

24    the plea of guilty?

25             THE DEFENDANT:  Yes, we have.

PROCEEDINGS                                    15

1        THE COURT:  Are you and the board of directors fully

2   satisfied with the representation of counsel and the advice

3   given to the defendant in this case by your attorneys?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Counsel, have you discussed the matter

6   of pleading guilty with the board of directors of the

7   defendant?

8        MR. HERRINGTON:  I have, Your Honor.

9        THE COURT:  Counsel, does the defendant understand

10  the rights it will be waiving by pleading guilty?

11       MR. HERRINGTON:  Yes, Your Honor.

12       THE COURT:  Counsel, have you -- I'm going to ask

13  you to pull the microphone closer so I can hear you more

14  clearly.

15       Counsel, have you advised the defendant of the

16  maximum and minimum fine and restitution that can be imposed

17  in this case?

18       MR. HERRINGTON:  I have, Your Honor.

19       THE COURT:  As well as the potential penalties,

20  including probation in this case?

21       MR. HERRINGTON:  I have, Your Honor.

22       THE COURT:  Mr. Reifenberg, the defendant has a

23  right to plead not guilty or to persist in a plea of not

24  guilty.  No person or entity can be forced to plead guilty.

25       Do you understand?

1      THE DEFENDANT:  Yes.

2      THE COURT:  If the defendant pleads not guilty, the

3  defendant has the right under the constitution and laws of the

4  United States to a speedy and public trial before a jury of

5  its peers with the assistance of its attorney.

6      You understand?

7      THE DEFENDANT:  Yes.

8      THE COURT:  At any trial, sir, the defendant would

9  be presumed to be innocent.  The defendant would not have to

10  prove the defendant was innocent.  This is because under the

11  laws of the United States, it is the government that must come

12  forward with proof that establishes beyond a reasonable doubt

13  the defendant is guilty of the crime charged.  If the

14  government failed to meet this burden of proof, the jury would

15  have the duty to find the defendant not guilty.

16      You understand?

17      THE DEFENDANT:  I do.

18      THE COURT:  During the course of a trial, witnesses

19  for the government would have to come here to court and

20  testify in the defendant's presence.  The defendant and its

21  representatives would have the right to have their lawyers

22  cross-examine these witnesses.

23      Defense counsel could raise legal objections to the

24  evidence the government sought to offer against the

25  defendants.  Defense counsel could offer evidence on the

PROCEEDINGS                    17

1    defendant's behalf if they thought there was evidence that

2    might help the defendant in this case.

3              Defense counsel could compel witnesses to come to

4    court and testify in the presence of the defendant if it

5    thought it would help the defendant's case.

6              Do you understand?

7              THE DEFENDANT:  I do.

8              THE COURT:  If the defendant wished to go to trial

9    but chose not to testify through its representative, the Court

10   would instruct the jury that it could not hold that against

11   the defendant.

12             Do you understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  If instead of going to trial, however,

15   the defendant pled guilty to the crime charged, and if I

16   accept the defendant's guilty plea, the defendant will be

17   giving up the right to a trial and all the other rights I have

18   just discussed.

19             If the defendant pleads guilty, I will have to ask

20   you questions about what the defendant did and where the

21   defendant did it in order to satisfy myself the defendant is,

22   in fact, guilty of the charge to which it seeks to plead

23   guilty.

24             If you answer my questions about the offense under

25   oath on the record and in the presence of counsel, the answers

PROCEEDINGS                                                18

1    may later be used against you as the representative in a

2    prosecution for perjury of false statement.

3              Mr. Reifenberg, does the defendant understand each

4    and every one of the rights I've just explained to you?

5              THE DEFENDANT:  It does.

6              THE COURT:  Is the defendant willing to give up its

7    right to trial and all of the other rights I've just discussed

8    with you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  I'm now going to discuss some of the

11   possibility penalties to the crime to which the defendant

12   seeks to plead guilty.

13             As set forth in paragraph 16 of the plea agreement,

14   which is in evidence, the reading out loud has been waived by

15   both parties, the defendant faces a statutory maximum possible

16   fine of $500,000 or twice the gross pecuniary gain or gross

17   pecuniary loss resulting from the offense whichever is

18   greater.

19             The parties have agreed the gross pecuniary loss

20   results from the offense in this case is approximately

21   $208 million.  Therefore, the maximum fine that may be imposed

22   is twice the gross gain or approximately $416 million.

23             The defendant also faces a potential five-year

24   probation restitution period, restitution in the amount of any

25   victims' losses as ordered by this Court, and a $400 mandatory

1    special assessment, which I'm required to assess per count

2    against the corporate entity.

3              You understand this?

4              THE DEFENDANT:  I do.

5              THE COURT:  Under the Sentencing Reform Act of 1984,

6    the United States of America's Sentencing Commission has

7    issued guidelines for judges to follow in determining the

8    appropriate sentence in a criminal case.  These guidelines are

9    advisory, and ordinarily I would consider them along with the

10   particular facts and circumstances of the defendant's case,

11   and all the sentencing factors set forth in Title 18 of the

12   United States Code, Section 3553(a) in determining what an

13   appropriate sentence should be.

14             Mr. Reifenberg, have you and the board discussed

15   with the defendant's attorney how the advisory guidelines

16   might apply to your case?

17             THE DEFENDANT:  We have.

18             THE COURT:  The parties calculated the guideline

19   fine range in this case, paragraph 18 of the plea agreement.

20   The parties' guidelines calculation results in a fine range of

21   $291,200,000 to $582,400,000.

22             Mr. Reifenberg, as I mentioned, ordinarily I would

23   consider the guidelines range in determining the appropriate

24   sentence.  However, because of the nature of the defendant's

25   plea in this case, if I accept the guilty plea pursuant to the

PROCEEDINGS                                                    20

1   plea agreement, I will not apply the advisory guidelines in

2   determining the defendant's sentence.

3           In paragraph 19 of the agreement, the government and

4   the defendant have agreed, pursuant to Rule 11(C) of the

5   Federal Rules of Criminal Procedure to a particular

6   disposition.

7           Defendant's parent company, Credit Suisse Group AG,

8   by entering into a deferred prosecution agreement, which will

9   happen immediately after this plea, has agreed to pay certain

10  sums of money.  Specifically, the parent company has agreed to

11  a total criminal penalty of $247,520,000.  $500,000 of that

12  penalty will be paid as a criminal fine by this defendant

13  Credit Suisse Securities (Europe) Limited.

14          According to the plea agreement, the parent

15  company's payment obligations under the deferred prosecution

16  agreement will be complete upon the payment of $175,568,000,

17  $500,000 of which the defendant will pay as a criminal fine

18  pursuant to this agreement, so long as the parent company pays

19  the remaining amount of the total criminal penalties to the

20  United States Securities and Exchange Commission, and the

21  United Kingdom Financial Conduct Authority, the FCA, by the

22  end of one year from the beginning of the term.

23          Is that a correct statement of the agreement?

24          THE DEFENDANT:  It is.

25          THE COURT:  Is that a correct statement, Mr. Mehta?

PROCEEDINGS                                    21

1          MR. MEHTA:  Yes, Your Honor.

2          THE COURT:  Mr. Reifenberg, pursuant to local

3    Rule 11(C)(1) -- strike that.

4          Mr. Reifenberg, pursuant to Rule 11(c)(1)(C), if, in

5    fact, I accept the guilty plea, I must impose the sentence

6    agreed to by the parties.

7          Do you understand?

8          THE DEFENDANT:  I do.

9          THE COURT:  However, if I chose not to follow the

10   terms of the agreement relating to the defendant's sentence,

11   then I will give the defendant an opportunity to withdraw its

12   plea of guilty, if provided for.

13         Do you understand that?

14         THE DEFENDANT:  I do.

15         THE COURT:  If the defendant choses to withdraw its

16   plea of guilty, it may proceed to trial, as it would have, had

17   it not chosen to plead guilty.  However, if the defendant

18   chooses not to withdraw its guilty plea, I may then impose a

19   sentence that is more severe than provided for in the plea

20   agreement.

21         So in other words, I would not be bound by the terms

22   of the plea agreement relating to the defendant's sentence.

23         Is that clear to you?

24         THE DEFENDANT:  It is.

25         THE COURT:  The defendant is also waiving its right

PROCEEDINGS                         22

1    to appeal.  Under some circumstances, a defendant or the

2    government may have the right to appeal any sentence I impose.

3    By entering into this agreement, however, the defendant has

4    waived its right to appeal the sentence, and waived its right

5    to collaterally attack or to challenge its conviction or

6    sentence in this case.

7            Do you understand that, sir?

8            THE DEFENDANT:  I do.

9            THE COURT:  Is that the understanding of the

10   government?

11           MR. MEHTA:  Yes, Your Honor.

12           THE COURT:  Mr. Reifenberg, according to the

13   agreement, the defendant is also agreeing not to dispute the

14   statement of facts.  It's agreeing, it is agreeing that the

15   statement of facts, which is attached to the plea agreement,

16   which is in evidence attached as Exhibit A, will be admissible

17   against the defendant in any criminal proceeding involving the

18   defendant.

19           The defendant agrees the statement of facts can, in

20   fact, be used in the government's case-in-chief as

21   impeachment.  And at any sentencing hearing or other hearing,

22   the defendant waives any right to suppress the statement or to

23   argue it is otherwise inadmissible as evidence.

24           The defendant has also agreed to cooperate with the

25   government and to work with the parent company in fulfilling

PROCEEDINGS                                           23

1    the obligations of that company's deferred prosecution

2    agreement.

3              Do you understand all of that, Mr. Reifenberg?

4              THE DEFENDANT:  I do.

5              THE COURT:  Do you agree with it?

6              THE DEFENDANT:  I do.

7              THE COURT:  Does the government agree with it?

8              MR. MEHTA:  Yes, Your Honor.

9              THE COURT:  Are there any other provisions of the

10   agreement the government believes I need to specifically call

11   to the attention of the defendant and to address today?

12             MR. MEHTA:  Yes, Your Honor, just the restitution,

13   which is on paragraph 19, Your Honor.

14             THE COURT:  Why don't you read that out loud into

15   the record, and we'll make sure the defendant is on board with

16   that.  Take your time, keep your voice up.

17             MR. MEHTA:  Yes, Your Honor.

18             The defendant and the parent company shall be

19   jointly and severally liable for restitution in the full

20   amount of each victims' losses as determine by the Court at

21   sentencing.  And restitution is mandatory pursuant to 18 U.S.

22   Code, Sections 3663(a) and 3664.

23             The defendant agrees to pay restitution in the full

24   amount --

25             THE COURT:  A little slower for the court reporter.

PROCEEDINGS                                        24

1           MR. MEHTA:  -- as determined by the Court.

2           The parties jointly recommend that the Court use an

3    event study methodology to determine the amount of victim,

4    investor losses directly and proximately caused by the fraud

5    scheme that is set out in the information and the statement of

6    facts.

7           The quote, recommended methodology, end quote.

8           Under the recommended methodology, the parties agree

9    that investors who held the EMATUM Securities on April 15th,

10   2016, and/or on April 29th, 2016, may be entitled to

11   restitution because disclosures that partially revealed the

12   fraud scheme, and/or materialization of the risk on those

13   approximate dates, the quote/unquote events, resulted in a

14   specifically significant decline in value of the EMATUM

15   Securities.

16          The quote, proximately harm investors, end quote.

17          The parties agree that:  One, the drop in value of

18   the EMATUM Securities attributable to the events was directly

19   and proximately caused by the fraud scheme; two, the

20   recommended methodology fairly and reasonably estimates

21   restitution in this case; and three, the recommended

22   methodology will not complicate or prolong sentencing unduly.

23          The parties agree to recommend that the proximately

24   harmed investors receive restitution in an amount equal to

25   price decline of the EMATUM Securities attributable to the

1   events under the recommended methodology multiplied by the

2   number of EMATUM Securities the proximately harmed investor

3   held, minus any gain the proxy harm investor realized from any

4   subsequent sale of the EMATUM Securities.

5          The quote, proximately harm investor losses, end

6   quote.

7          The parties agree that the proximately harmed

8   investor losses calculated pursuant to the recommended

9   methodology are not subject to reductions for gains

10  proximately harmed investors may have obtained through having

11  strategies or coupons received from the EMATUM Securities.

12         Should the Court reject the recommended methodology

13  for restitution:  One, the defendant and the offices preserve

14  all arguments as restitution; and two, all other provisional

15  plea agreements and the deferred prosecution agreement remains

16  valid and enforceable.

17         THE COURT:  Is that agreed to by the defendant?

18         THE DEFENDANT:  It is.

19         THE COURT:  Is there anything else the government

20  wishes the Court to call to the particular attention of the

21  defendant at this time?

22         MR. MEHTA:  Not at this time, Your Honor.

23         THE COURT:  Now, Mr. Reifenberg, do you have any

24  questions about the rights the defendant is giving up, the

25  punishment it faces, the terms of the plea agreement, the

PROCEEDINGS                                     26

1    nature of the charge, or anything else related to this case?

2              THE DEFENDANT:  I do not, Your Honor.

3              THE COURT:  Does defense counsel have any questions

4    for the Court at this time?

5              MR. HERRINGTON:  I do not, Your Honor.

6              THE COURT:  Does the Assistant United States

7    Attorney have any questions for the Court at this time?

8              MR. MEHTA:  No, Your Honor.

9              THE COURT:  Defense counsel, are you aware of any

10   viable legal defenses to the charge against your client at

11   this time?

12             MR. HERRINGTON:  I do not, Your Honor.

13             THE COURT:  Mr. Reifenberg, are you ready to plead

14   on behalf of the defendant?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Reifenberg, what is the defendant,

17   Credit Suisse Securities (Europe) Limited, plea to the sole

18   count of the information, which is conspiracy to commit wire

19   fraud, guilty or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  Is the defendant making this plea of

22   guilty voluntarily?

23             THE DEFENDANT:  It is.

24             THE COURT:  Is the defendant making this plea of

25   guilty of its own free will?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has anyone threatened the defendant to

3   get it to plead guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anyone forced the defendant to plead

6   guilty?

7          THE DEFENDANT:  No.

8          THE COURT:  Other than the plea agreement with the

9   government, and the deferred prosecution agreement between the

10  government and the defendant's parent company, has anyone made

11  any promise that has caused the defendant to plead guilty?

12         THE DEFENDANT:  No.

13         THE COURT:  Other than as agreed to in the written

14  plea agreement, has anyone made any promise as to what the

15  defendant's sentence will be in this case?

16         THE DEFENDANT:  No.

17         THE COURT:  Mr. Reifenberg, what did the defendant,

18  Credit Suisse Securities (Europe) Limited, do that makes it

19  guilty of the charges against it in the information?

20         THE DEFENDANT:  Your Honor, from approximately 2013

21  to 2016, Credit Suisse Securities (Europe) Limited through

22  certain of its agents and employees, and together with others,

23  knowingly and wilfully agreed to participate in a conspiracy

24  to violate the federal wire fraud statute by participating in

25  a scheme to obtain money by false and fraudulent

PROCEEDINGS                                             28

1    representations to investors in certain debt instruments

2    related to projects in Mozambique.

3              Through certain of its employees and agents, Credit

4    Suisse Securities (Europe) Limited caused acts to be committed

5    in furtherance of the conspiracy in the U.S., including in the

6    form of payments and communications made via wires that passed

7    through the Eastern District of New York.

8              THE COURT:  What is the time period?  Go back to the

9    beginning of statement that you just read.

10             THE DEFENDANT:  Sure.  Approximately 2013 to 2016.

11             THE COURT:  Is that the time period, Mr. Mehta?

12             MR. MEHTA:  Yes, Your Honor.  The information

13   alleges from in or between June 2013 and at least March 2017,

14   so I think the allocution satisfies that as the time period as

15   well.

16             THE COURT:  All right.  Are there any additional

17   questions that the government would like me to address to the

18   defendant with respect to the allocution at this point?

19             MR. MEHTA:  No, Your Honor.

20             THE COURT:  Is there anything else defense counsel

21   would like the Court to ask the defendant at this point?

22             MR. HERRINGTON:  Your Honor.

23             THE COURT:  Is there anything else the defendant

24   would like to say to the Court at this point?

25             THE DEFENDANT:  No, Your Honor.

PROCEEDINGS                                            29

1           THE COURT:  Based on the information provided to

2    this Court, as well as the representations of Mr. Reifenberg,

3    defense counsel, and the government, I find that the

4    defendant, Credit Suisse Securities (Europe) Limited, is, in

5    fact, aware of the nature of the charge and the consequence of

6    its guilty plea, and that the plea of guilty is a knowing and

7    voluntary plea and is supported by an independent basis of

8    fact containing the central elements of the offense, and I

9    therefore accept the plea of guilty of the defendant, Credit

10   Suisse Securities (Europe) Limited, to the sole count of the

11   information.

12           Pursuant to paragraph 21 of the plea agreement, I

13   understand that the parties would like to waive the

14   preparation of a presentence report and schedule a sentencing

15   hearing in the absence of a presentence report.

16           Is that correct, Mr. Mehta?

17           MR. MEHTA:  Yes, Your Honor.

18           THE COURT:  Is that correct, defense counsel?

19           MR. HERRINGTON:  Yes, Your Honor.

20           THE COURT:  Is that correct, Mr. Reifenberg?

21           THE DEFENDANT:  It is.

22           THE COURT:  All right.

23           I understand you want a date approximately five

24   months out; is that correct?

25           MR. MEHTA:  Yes, Your Honor.

PROCEEDINGS                                        30

1            THE COURT:  All right, let me ask my courtroom

2     deputy what availability we have approximately five months out

3     in terms of date and time.

4            Speak into the microphone, Ms. Yu.

5            THE COURTROOM DEPUTY:  Judge, we have Wednesday,

6     March 9th, 2022, at noon.

7            THE COURT:  You can stop there.

8            Does that work for the government, Wednesday

9     March 9th?

10           MR. MEHTA:  Yes, Your Honor.

11           THE COURT:  Does that work for defense counsel and

12    for the defendant?

13           MR. HERRINGTON:  Yes, Your Honor.

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  All right, that's when we will schedule

16    the sentencing hearing, and that will be in the absence of a

17    PSR.

18           Now, is there anything further that either counsel

19    wishes to state to the Court today, for the government, on

20    this matter?

21           MR. MEHTA:  No, Your Honor.

22           THE COURT:  Defense counsel?

23           MR. HERRINGTON:  Your Honor, I would just very

24    briefly observe.  One of the reasons that we agreed to five

25    months was an appropriate start --

PROCEEDINGS                    31

1          THE COURT:  Go slower and into the mic.  Go ahead.

2          MR. HERRINGTON:  For the reasons that the government

3   and I agreed that five months was an appropriate time to allow

4   before sentencing, was:  First, because of the restitution

5   process that Mr. Mehta just read; and then secondly, Credit

6   Suisse Securities -- well, Credit Suisse, will actually be

7   seeking a waiver from the Department of Labor related to its

8   ability to manage ERISA retirement funds.

9          So we will be making that application very promptly,

10  and we will keep the Court apprised of progress on that within

11  the Department of Labor.  The disqualification takes place at

12  sentencing, which is why the scheduling of the sentencing and

13  the Department of Labor's processing of the labor has some

14  relevance to each other.

15         THE COURT:  Thank you, counsel.

16         Is that acceptable, Mr. Mehta?

17         MR. MEHTA:  Yes, Your Honor.

18         THE COURT:  All right.

19         Anything else from defense counsel?

20         MR. HERRINGTON:  No, Your Honor.

21         THE COURT:  Anything else from you, sir?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  All right, this matter then is concluded

24  and this matter is adjourned.

25         I thank you all.  Are we prepared to go without a

PROCEEDINGS                                    32

1   break to the second matter, or do the parties wish to take a

2   ten-minute comfort break?  It's up to you.

3            MR. HERRINGTON:  No break required, Your Honor.

4            MS. MOESER:  We're fine, Your Honor.

5            THE COURT:  Ready to roll on?

6            MS. MOESER:  Yes, sir.

7

8            (Whereupon, the matter was concluded.)

9

10                   *      *      *      *      *

11

12

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15      s/ Linda D. Danelczyk              October 19, 2021

16        LINDA D. DANELCZYK                    DATE

17

18                    E X H I B I T S

19   COURT                        PAGE

20   1                              7

21   2                             12

22   3                             12

23

24

25