

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

F. #2016R00695

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 19, 2022

<u>By ECF</u>

The Honorable William F. Kuntz
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Credit Suisse Securities (Europe) LLC
        <u>Criminal Docket No. 21- 520 (WFK)</u>

Dear Judge Kuntz:

    The government submits this memorandum on behalf of the parties in advance of the sentencing hearing scheduled in the above-captioned matter for July 22, 2022 at 12:00 p.m. As the Court is aware, on October 19, 2021, the defendant Credit Suisse Securities (Europe) LLC (CSSEL) pleaded guilty to a one-count information charging wire fraud conspiracy. At the same time, CSSEL's ultimate parent company, Credit Suisse Group AG (Credit Suisse), entered into a deferred prosecution agreement (the DPA). In connection with CSSEL's plea, the parties entered into an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the Plea Agreement or PA) that sets forth an agreed-upon sentence consisting of the payment by CSSEL of $500,000 of the total criminal penalty of $247,520,000,[1] as well as an agreement by Credit Suisse to ensure that its compliance program meets certain standards. For the reasons set forth below, this sentence is sufficient but not greater than necessary to punish CSSEL for its criminal conduct.

**I.  <u>Background</u>**

    As stipulated to by CSSEL and set forth in Attachment A to the Plea Agreement (the Statement of Facts or SOF), from in or about and between 2013 and March 2017, CSSEL and co-conspirators used U.S. wires and the U.S. financial system to defraud investors in

---

[1] As detailed below, the government has agreed to credit a portion of the total criminal penalty against amounts paid by Credit Suisse to resolve other domestic and international investigations into the company for the same conduct.

securities related to a Mozambican state-owned entity, Empresa Moçambicana de Atum S.A. (EMATUM), which Mozambique created to develop a state-owned tuna fishing project. Credit Suisse, through its employees and agents, including then CSSEL Managing Directors Andrew Pearse and Surjan Singh, conspired to defraud investors and potential investors in EMATUM. Members of the conspiracy made numerous material misrepresentations and omissions relating to, among other things, (1) the use of loan proceeds; (2) kickback payments to CSSEL bankers and the risk of bribes to Mozambican officials; and (3) the existence and maturity dates of debt owed by Mozambique, including another loan that Credit Suisse arranged to a Mozambique state-owned entity (ProIndicus) and a different loan another bank arranged with Credit Suisse's knowledge. Investors were told that the loan proceeds would only be used for the tuna fishing project. Instead, co-conspirators diverted loan proceeds obtained from investors. Specifically, a contractor that supplied boats and equipment for EMATUM and that received the loan proceeds from Credit Suisse paid kickbacks of approximately $50 million to CSSEL bankers and bribes totaling approximately $150 million to Mozambican government officials.

As noted above, on October 19, 2021, CSSEL waived indictment and pleaded guilty before this Court, pursuant to the Plea Agreement, to a one-count criminal Information charging it with wire fraud conspiracy, and Credit Suisse entered into a DPA to resolve its criminal exposure for its role in the same conspiracy.

## II.   Applicable Guidelines Range and Sentence

As set forth in the Plea Agreement, the parties agree that CSSEL's applicable Guidelines offense level should be calculated as follows (see PA ¶ 18):

Offense Level—Wire Fraud. Based upon USSG § 2B1.1, the total offense level is 39, calculated as follows:

| | | |
|---|---|---|
| (a)(1) | Base Offense Level | 7 |
| (b)(1)(N) | Loss more than $150M | +26 |
| (b)(2)(a) | More than 10 victims | +2 |
| (b)(2)(10) | Outside the United States/Sophisticated Means | +2 |
| (b)(17)(A) | $1M in gross receipts from a financial institution | +2 |
| **Total Offense Level** | | **39** |

Base Fine. Based upon USSG § 8C2.4(a)(3), the base fine is $208,000,000.

Culpability Score. Based upon USSG § 8C2.5, the culpability score is 7, calculated as follows:

|       |                    |                                                                      |     |
|-------|--------------------|----------------------------------------------------------------------|-----|
| (a)   |                    | Base Culpability Score                                               | 5   |
| (b)(2)(A)(i) |             | 1,000 or More Employees and Participation by High-Level Personnel    | +4  |
| (g)(2)|                    | Cooperation and Acceptance                                           | -2  |
|       | **TOTAL**          |                                                                      | 7   |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine (USSG § 8C2.4(a)(2)) | $208,000,000 |
| Multipliers (USSG § 8C2.6) | 1.4 (min)/2.8 (max) |
| Fine Range (USSG § 8C2.7) | $291,200,000 (min)/ $582,400,000 (max) |

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that the appropriate total criminal penalty is $247,520,000, which reflects a 15 percent discount off the bottom of the applicable Sentencing Guidelines fine range, as well as $10,344,865 million in forfeiture. (PA ¶ 19(a)).

As noted in the Plea Agreement, Credit Suisse also agreed, concurrent with the DPA, to resolve additional investigations relating to the criminal conduct detailed in the Statement of Facts, by settling an Administrative Action filed by the U.S. Securities and Exchange Commission (SEC) and by resolving the United Kingdom Financial Conduct Authority's (UK FCA) investigation. Consistent with Justice Manual 1.12-100, the government agreed to credit the forfeiture amount of $10,344,865 against the SEC's disgorgement and $47,200,000 of the penalty amount Credit Suisse paid to the SEC, and $24,752,000 of the penalty amount Credit Suisse paid to the UK FCA. (Id. ¶ 19(a)).

As a result, the total criminal penalty owed to the United States is $175,568,000. (PA ¶ 19(a)). Pursuant to the Plea Agreement, CSSEL will pay $500,000 of that total criminal penalty, as well as a mandatory special assessment of $400; Credit Suisse will pay the remaining $175,068,000 pursuant to the DPA within ten days of the entry of judgment in this case. (Id.). In addition, Credit Suisse has committed to continuing to enhance its compliance program and internal controls, including ensuring that that its compliance program satisfies the elements set forth in Attachment C of the DPA. (Id. ¶ 6(g)).

### III.     The Proposed Sentence is Appropriate

The government respectfully submits that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of the proposed sentence, which combines a significant criminal penalty with a commitment by Credit Suisse to continue to enhance its compliance program and internal

controls. The parties arrived at the proposed sentence based in part on the application of guidance issued by the Department of Justice for the evaluation of corporate criminal cases and for cases involving coordinated corporate resolutions; as a result, the proposed sentence avoids unwarranted sentencing disparities among similarly-situated defendants. See 18 U.S.C. § 3553(a)(6). The proposed sentence is also appropriate given the nature and circumstances of the offense; the history and characteristics of CSSEL; and the need for deterrence for similar conduct. See 18 U.S.C. §§ 3553(a)(1) & (a)(2).

      A.      <u>Application of Guidance Avoids Unwarranted Sentencing Disparities</u>

As noted above and set forth in the Plea Agreement, the proposed criminal penalty reflects a 15 percent discount off the bottom of the applicable Sentencing Guidelines fine range. This discount reflects Credit Suisse's performance across three key factors considered by the government in corporate cases nationwide: (1) whether the conduct was voluntarily self-disclosed; (2) whether the defendant provided full cooperation; and (3) whether the defendant has engaged in remediation. See Justice Manual 9-47.120, *available at* https://www.justice.gov/jm/jm-9-47000-foreign-corrupt-practices-act-1977 (FCPA Corporate Enforcement Policy).

The proposed sentence also reflects the fact that CSSEL and Credit Suisse received partial cooperation credit for their cooperation with the government's investigation. As detailed in the Plea Agreement, CSSEL and Credit Suisse provided the government with assistance during the course of its investigation, including (i) collecting and producing voluminous evidence located in other countries, (ii) voluntarily making foreign-based employees available for interviews in the United States; and (iii) making regular factual presentations and investigative updates to the government. (PA ¶ 6(c)). However, CSSEL and Credit Suisse did not receive full cooperation credit because they were significantly delayed in producing relevant evidence, including recorded phone calls in which employees discussed concerns relating to the conduct set forth in the Statement of Facts. (Id. ¶ 6(d)). CSSEL and Credit Suisse ultimately provided to the government all relevant facts known to them, including information about the individuals involved in the misconduct. (Id. ¶ 6(e)). In addition, the proposed sentence reflects the fact that Credit Suisse and CSSEL have engaged in remedial measures, including (i) implementing additional controls, procedures and policies relating to government-based loans; (ii) disciplining or withholding compensation for certain employees involved in the conduct; and (iii) providing additional compliance training to current employees. (Id. ¶ 6(f)).

Finally, the government's decision to credit certain penalty amounts paid by Credit Suisse to other domestic and foreign law enforcement and regulatory entities against the total criminal penalty here comports with Department of Justice policy regarding coordination of corporate resolution penalties arising from the same misconduct, and specifically the goal of avoiding "unnecessary imposition of duplicative fines, penalties, and/or forfeiture against" a corporate entity. See Justice Manual 1-12.100, *available at* https://www.justice.gov/jm/jm-1-12000-coordination-parallel-criminal-civil-regulatory-and-administrative-proceedings.

4

    B.    <u>Consideration of Additional 3553(a) Factors Supports the Sentence</u>

The criminal penalty in the proposed sentence is also appropriate given the additional competing factors set forth by 18 U.S.C. § 3553(a). It takes into account the seriousness of the offense; the involvement of two CSSEL Managing Directors in the misconduct; and the need for general deterrence given the difficulty of detecting and prosecuting sophisticated fraud schemes such as this one. <u>See</u>, e.g., <u>Harmelin v. Michigan</u>, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). It also takes into account Credit Suisse's agreement to continue cooperation with the government and its enhancement and commitment to continue to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the elements set forth in Attachment C to the DPA, and agreed to enhanced self-reporting on those remediation and enhancement efforts as set forth in Attachment D to the DPA.

**IV.**    **<u>Restitution</u>**

CSSEL, Credit Suisse, and government agree that restitution is mandatory under the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. §§3663A and 3664, in the full amount of each victim's losses as determined by the Court. (PA ¶ 19(d)). CSSEL and Credit Suisse shall be jointly and severally liable for the full amount of restitution. (<u>Id</u>.) As discussed below, the parties agree and recommend that the Court should order restitution in the amount of $22,619,174 pursuant to the MVRA.

    A.    <u>The MVRA</u>

The MVRA, which is found in Title II of the Antiterrorism and Effective Death Penalty Act of 1996, was enacted on April 24, 1996. The MVRA significantly reformed the structure and enforcement of criminal restitution by:

1. making restitution mandatory, as a separate term of the sentence for all crimes of violence and Title 18 offenses against property. 18 U.S.C. § 3663A(c)(1);

2. requiring the court to enter a restitution order for each defendant, without regard to the defendant's economic situation, who has been convicted or pleaded guilty to most crimes. 18 U.S.C. § 3664(f)(1)(A);

3. providing consolidated procedures for the issuance of restitution orders. 18 U.S.C. § 3664; and

4. enhancing the post-conviction enforcement of restitution orders. 18 U.S.C. § 3613(a) (the United States may use practices and procedures for enforcement, as provided under federal or state law).

  B.  Covered Categories of Crimes/Covered Victims

  The MVRA requires the Court to order a defendant to make full restitution to each victim of, inter alia, an offense against property under Title 18 or 21 U.S.C. § 856(a), including any offense committed by fraud or deceit. Thus, restitution is mandatory in this and all of its related cases.

  The MVRA is inapplicable and restitution shall not be ordered if the number of victims is so large as to make restitution impracticable or determining complex issues of fact relating to restitution would so complicate or prolong the sentencing process that the need to provide restitution is outweighed by the burdens on the sentencing process. See 18 U.S.C. §§ 3663A(c)(3); 3664(a); 3663(a)(1)(B). Any identifiable victim who has suffered a pecuniary loss as a direct and proximate result of the defendant's criminal conduct, however, shall be entitled to restitution. These include identifiable victims of substantive criminal counts, see 18 U.S.C. §§ 3663(a)(1)(A) and (a)(2) and 3663A(a)(1) and (2), or of a conspiracy, see 18 U.S.C. §§ 3663(a)(2) and 3663A(a)(2).

  The parties agreed that on April 15, 2016 and/or on April 29, 2016 disclosures partially revealed the fraud scheme and/or there was a materialization of risk that resulted in a statistically significant decline in the value of the EMATUM securities. (PA ¶ 19(d)). The parties agreed that the drop in value in the EMATUM securities was directly and proximately caused by the fraud scheme and that the restitution methodology recommended by the parties would not complicate or prolong sentencing unduly. (Id.)

  C.  Restitution Procedures

  The procedures for issuance and enforcement of judgments of restitution are set forth in 18 U.S.C. § 3664 and by incorporation in 18 U.S.C. §§ 3571-3574 and 3611-3615. See 18 U.S.C. § 3664(m). The court shall order restitution to each victim in the full amount of each victim's losses, without consideration of the economic circumstances of the defendant. 18 U.S.C. § 3664(f)(1)(A).

  Restitution may only be awarded to identified victims for identified losses. The victim, however, is not required to file an affidavit of loss. The court solely needs information "sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a).

  To meet this standard, the prosecutor is required to provide a list identifying the amounts subject to restitution after consulting, to the extent practicable, with all identified victims, the total loss and the identity of the victims for the court. 18 U.S.C. § 3664(d)(1). After reviewing the report, the court may require additional documentation or hear testimony. 18 U.S.C. § 3664(d)(4). The court may refer any issue to a magistrate judge. 18 U.S.C. § 3664(d)(6). All restitution disputes shall be resolved by a preponderance of the evidence. 18 U.S.C. § 3664(e). As to the victims, that lower burden is held by the government. Yet, the burden of establishing the defendant's financial resources is on the defendant. Id.

  In the Plea Agreement, the parties agreed that investors who held the EMATUM securities on April 15, 2016 and/or on April 29, 2016 could be entitled to restitution. (PA ¶

19(d))). The parties further agreed that an event study methodology would fairly and reasonably estimate restitution. (Id.)

### D. Restitution Calculation and Order

Pursuant to the methodology agreed upon between the government and CSSEL and Credit Suisse, the government received submissions from potential victims regarding their EMATUM holdings. The government applied the event study methodology to each victim's holdings and assessed the restitution amounts due each victim. These amounts are set forth in the attached proposed order and total $22,619,174.

Credit Suisse and CSSEL agree with this calculation. The government has notified these victims of the restitution amount calculated for each victim.

## V. Conclusion

For the reasons set forth herein, the parties respectfully request that the Court impose the proposed sentence and issue a restitution order against the defendant CSSEL in the amount of $22,619,174.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Hiral D. Mehta
Assistant U.S. Attorney
(718) 254-6418

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By:     /s/
Margaret A. Moeser
Trial Attorney

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By:     /s/
David M. Fuhr
Trial Attorney

cc: Counsel for CSSEL and Credit Suisse by ECF