UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA,          :

                                :

        v.                   :        **MEMORANDUM & ORDER**

                                :        21-CR-520 (WFK)

CREDIT SUISSE SECURITIES (EUROPE)   :
LIMITED,                             :

                                :

                Defendant.     :

-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On October 19, 2021, Defendant, through company representative Alan Reifenberg, waived indictment and pleaded guilty to the sole count of an Information pursuant to an agreement under Fed. R. Crim. P. 11(c)(1)(C). The Information charged Defendant with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to a $500,000.00 criminal penalty, a $400.00 special assessment, and $22,619,174.00 in restitution.

## BACKGROUND

On October 8, 2021, the Government filed a sealed notice of its intent to file an

Information upon Credit Suisse Securities (Europe) Limited's ("Defendant") waiver of

indictment. The single-count Information charged Defendant with conspiracy to commit wire

fraud in violation of 18 U.S.C. §§ 1343 and 1349. Specifically, Defendant was charged with

using international and interstate wires to transmit false and misleading statements to investors,

transfer proceeds from those investors, and pay kickbacks and bribes. The Information also

contains a criminal forfeiture allegation.

On October 19, 2021, Defendant, through company representative Alan Reifenberg,

waived indictment and pleaded guilty to the sole count of the Information pursuant to an

agreement under Fed. R. Crim. P. 11(c)(1)(C). The Court hereby sentences Defendant and sets

forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors

pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.     Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  The

"starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court

chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for

the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. §

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing or varying

"in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific

statement explaining why the guidelines range did not account for a specific factor or factors

under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y.

Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to

consider in determining what sentence to impose on a criminal defendant.  The Court addresses

each in turn.

### II.    Analysis

#### A.  The Nature and Circumstances of the Offense and the History and
####       Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of

the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

2

1.  Company Background

During the relevant period, Defendant was a wholly-owned subsidiary of Credit Suisse

Group AG, a global investment banking, securities, and investment management firm

incorporated and headquartered in Zurich, Switzerland. Information ¶ 1, ECF No. 9. Defendant

is headquartered in London, United Kingdom. *Id.*

Defendant acted as a Joint Lead Manager underwriting the issuance of $500 million in

loan participation notes ("LPNs") to partially finance an $850 million loan for a tuna fishing

project in Mozambique in 2013 and acted as Joint Dealer Manager in the exchange of those

LPNs for a sovereign bond in 2016. *Id.* ¶ 2.

2.  Nature of Offense

As stipulated to by the parties, from in or about and between 2013 and March 2017,

Defendant and its co-conspirators used U.S. wires and the U.S. financial system to defraud

investors in securities related to a Mozambican state-owned entity, Empresa Moçambicana de

Atum S.A. (EMATUM), which Mozambique created to develop the state-owned tuna fishing

project. Gov. Mem. at 1-2. Defendant, through its employees and agents, including then

Managing Directors Andrew Pearse and Surjan Singh, conspired to defraud investors and

potential investors in EMATUM. *Id.* at 2. Members of the conspiracy made numerous material

misrepresentations and omissions relating to, among other things, (1) the use of loan proceeds;

(2) kickback payments to Defendant's bankers and the risk of bribes to Mozambican officials;

and (3) the existence and maturity dates of debt owed by Mozambique, including another loan

that Defendant arranged to a Mozambique state-owned entity (ProIndicus) and a different loan

another bank arranged with Defendant's knowledge. *Id.* Investors were told the loan proceeds

would only be used for the tuna fishing project. *Id.* Instead, co-conspirators diverted loan

proceeds obtained from investors. *Id.* Specifically, a contractor that supplied boats and equipment for EMATUM and that received the loan proceeds from Defendant paid kickbacks of approximately $50 million to Defendant's bankers and bribes totaling approximately $150 million to Mozambican government officials. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense in conspiring to commit wire fraud and provides for both specific and general deterrence. As noted, Defendant used international and interstate wires to transmit false and misleading statements to investors, transfer proceeds from those investors, and pay kickbacks and bribes. The Court's sentencing will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of conspiracy to commit wire fraud pursuant to a written plea agreement under Fed. R. Crim. P. 11(c)(1)(C). *See* Plea Agreement, ECF No. 11. For this offense, Defendant faces a statutory maximum fine of $500,000.00 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest. 18

U.S.C. §§ 1343, 3571(c)-(d).  Because the gross pecuniary loss resulting from the offense is approximately $208,000,000.00, the maximum fine is approximately $416,000,000.00. Defendant also faces a mandatory special assessment of $400.00.  18 U.S.C. § 3013.  Restitution is also mandatory for this offense.  18 U.S.C. § 3663A.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The relevant guideline in this case is USSG § 2B1.1, which provides for a base offense level of seven.  Because the offense involved a loss greater than $150,000,000.00, 26 points are added per USSG § 2B1.1(b)(1)(N).  Because the offense involved more than 10 victims, 2 points are added per USSG § 2B1.1(b)(2)(A)(i).  Because the offense was committed outside the United States and involved sophisticated means, another 2 points are added per USSG § 2B1.1(b)(10). Finally, because Defendant derived more than $1,000,000.00 in gross receipts from one or more financial institutions as a result of the offense, 2 points are added per USSG § 2B1.1(b)(17)(A). Accordingly, the parties agree to a total adjusted offense level of 39.

The parties also agree to a culpability score of 7.  Under USSG § 8C2.5, the base culpability score in this case is 5.  An additional 4 points are added because the organization had 1,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense.  USSG § 8C2.5(b)(2)(A)(i). Finally, a 2-point reduction is applied because the organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.  USSG § 8C2.5(g)(2).

Pursuant to USSG § 8C2, the parties calculate a base fine of $208,000,000.00.  USSG §§ 8C2.4(a) and (e).  Based on a minimum fine multiplier of 1.4 and a maximum multiplier of 2.8, USSG § 8C2.6, the parties agree on a Guidelines fine range of $291,200,000.00 to $582,400,000.00.

The parties urge the Court to impose a sentence of a $500,000.00 criminal fine, a mandatory special assessment of $400.00, and restitution in the amount of $22,619,174.00. According to the parties, this sentence is appropriate in light of the total criminal penalty Defendant and its Parent Company must pay pursuant to a separate Deferred Prosecution Agreement between the Parent Company and the Government.  That agreement requires the Defendant and the Parent Company to pay a total criminal penalty of $247,520,000.00, which reflects a 15% discount off the bottom of the applicable Sentencing Guidelines fine range.

The Government maintains the 18 U.S.C. § 3553(a) factors weigh in favor of this 15% reduction to the total criminal penalty.  The discount reflects Defendant's performance across three key factors considered by the Government in corporate cases nationwide: (1) whether the conduct was voluntarily self-disclosed; (2) whether the Defendant provided full cooperation; and (3) whether the Defendant has engaged in remediation.  The Court agrees with and adopts this conclusion.

The proposed sentence also reflects the fact that Defendant and the Parent Company received partial cooperation credit for their cooperation with the Government's investigation. Specifically, Defendant and the Parent Company provided the Government with assistance during the course of its investigation, including (i) collecting and producing voluminous evidence located in other countries, (ii) voluntarily making foreign-based employees available for interviews in the United States; and (iii) making regular factual presentations and

6

investigative updates to the Government. However, Defendant and the Parent Company did not receive full cooperation credit because they were significantly delayed in producing relevant evidence, including recorded phone calls in which employees discussed concerns relating to the conduct. Defendant and the Parent Company ultimately provided to the Government all relevant facts known to them, including information about the individuals involved in the misconduct.

The proposed sentence also reflects the fact that Defendant and the Parent Company have engaged in remedial measures, including (i) implementing controls, procedures and policies relating to government-based loans; (ii) disciplining or withholding compensation for employees involved in the conduct; and (iii) providing additional compliance training to current employees.

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Court's sentence is informed in part by the guidance issued by the Department of Justice for the evaluation of corporate criminal cases and for cases involving coordinated corporate resolutions. The sentence thus avoids unwarranted sentencing disparities among similarly-situated defendants.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is

mandatory in this case pursuant to 18 U.S.C. § 3663A, and accordingly, the Court imposes

restitution in the amount of $22,619,174.00 pursuant to its entry of a separate restitution order.

## CONCLUSION

The Court finds that a sentence of a $500,000.00 criminal penalty and $22,619,174.00 in

restitution is consistent with and is sufficient but no greater than necessary to accomplish the

purposes of § 3553. The Court will enter a separate restitution order. Defendant shall pay the

mandatory special assessment of $400.00.

The Court also expressly adopts the factual findings of the Plea Agreement and joint

sentencing memorandum, barring any errors contained therein.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 22, 2022
Brooklyn, New York

8